UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re
JUNE HEAD WHITE,                                        Case No. 05-12545-WRS

       Debtor

JUNE HEAD WHITE,

       Plaintiff

   v.                                                           Adv. Pro. No. 13-1119-WRS

FIRST FINANCIAL, LLC,
KENNETH N. GRANTHAM and
THADIUS WILLIAM MORGAN, JR.

       Defendants

## MEMORANDUM DECISION

This Adversary Proceeding came before the Court for trial on May 1, 2015. Plaintiff June Head White was present in Court and was represented by counsel Nicholas H. Wooten. Defendants Kenneth N. Grantham, Sr. was present on his own behalf and as a representative of Defendant First Financial, LLC, and Defendant Thadius William Morgan, Jr. was also present. The Defendants were represented by counsel Leon Merrill Shirley. The issue was whether the Defendants violated the discharge injunction invoked by <u>In re White</u>, Case No. 05-12545. The Court finds that each of the Defendants violated the discharge injunction. The Court further

finds that the violations committed by Defendants Grantham and First Financial were willful, but that the violations committed by Defendant Morgan were not willful.

## I.  FACTS

Plaintiff June White ("White") filed a petition in bankruptcy pursuant to Chapter 13 of the Bankruptcy Code on October 14, 2005, initiating Case No. 05-12545.  (05-12545, Doc. 1).  In her Chapter 13 plan, White proposed to modify the lien held by Acceptance Loan which was secured by a 2001 Mazda van.  (05-12545, Doc. 9).  Defendant Kenneth Grantham ("Grantham") timely filed an unsecured Proof of Claim on behalf of Defendant First Financial, LLC ("First Financial") in the amount of $8,203.34, for an indebtedness arising out of a pre-petition note ("old note").  (05-12545, Claim No. 6).  First Financial did not object to confirmation of White's plan, and this Court confirmed the plan on January 23, 2006.  (05-12545, Doc. 20).

White completed her payments under the plan and was granted a "full-compliance" discharge, pursuant to 11 U.S.C. § 1328(a), on March 14, 2011.  (05-12545, Doc. 47).  The Trustee disbursed $6,000.00 to Acceptance Loan to fully pay its claim secured by the 2001 Mazda van, and disbursed $397.44 to First Financial on its claim.  (05-12545, Doc. 49).  First Financial did not object to White's discharge or seek a determination that the indebtedness due it should be excepted from discharge.  The parties did not enter into a reaffirmation agreement.  The Defendants do not dispute that White discharged $7,805.90 in debt she owed to First Financial.

On August 5, 2011, approximately four months after her discharge was granted, White found herself in need of funds. She went to First Financial's place of business and spoke with Grantham, who she knew from previous business dealings with First Financial. White asked Grantham if she could borrow $300. Grantham told White that she still owed him money from her prior indebtedness and that she would have to repay. Grantham prepared a new promissory note, in the amount of $9,003.30, on behalf of First Financial ("new note"). White signed the new note on August 5, 2011. (Plaintiff's Exhibit D-1). The itemization of the amount First Financial purportedly financed White was listed on the new note as follows:

| | |
|---|---:|
| "Amount Given to Me Directly" | $7,805.90 |
| "Amount Paid on my (Loan) Account" | $0.00 |
| "Prepaid Finance Charges" | $120.00 |
| "Account Maintenance Fee (AMF)" | $180.00 |
| "Amounts Paid to . . . Insurance Companies" | $411.90 |
| "Amounts Paid to . . . Public Officials or State Agency" | $16.50 |
| "June White and Acceptance Loan" | $469.00 |
| "June White" | $300.00 |
| "Less Fees and Prepaid Finance Charges" | ($300.00) |
| **"Amount Financed"** | **$9,003.30** |

(Plaintiff's Exhibit D-1). First Financial charged White 28.97% interest on the total amount financed. Under the terms of the new note, White was to pay $287.93 per month for 60 months, and she would pay $17,275.80 if she made all payments on the new note.

White was not given $7,805.90 as represented on the face of the new note. Grantham testified at trial that First Financial wrote White a check for that amount and had her endorse it, then applied the funds to the discharged indebtedness on the old note. First Financial also paid $469 to Acceptance Loan, purportedly to clear title to White's 2001 Mazda van, so that First Financial would have a senior lien on the Mazda. White received fresh consideration of only $300 on the new note.

-3-

White made payments to First Financial totaling $1,913.80 on the new note. Upon White's default, First Financial hired Defendant Thaddius Morgan ("Morgan"), an attorney, to collect the new note. Morgan wrote demand letters on May 17, 2013 (Defendant's Exhibit D), on July 15, 2013 (Defendant's Exhibit E), and on August 19, 2013 (Defendant's Exhibit F), in an effort to collect. When White failed to pay, Morgan brought suit against White to collect the debt in a civil action styled <u>First Financial, LLC v. June White</u>, Case No. 19-CV-2013-900062, in the Circuit Court of Coffee County, Alabama. (Plaintiff's Exhibits B-1 to B-7). Morgan testified at trial that he was aware of White's 2005 bankruptcy case. He further testified that because the new note was dated August 5, 2011, which was after the filing of White's bankruptcy case, he was of the opinion that the indebtedness owed by White on the new note had not been discharged in bankruptcy. Morgan testified that he was not aware that $7,805.90 of the consideration for the new note was in fact a rollover of the discharged old note. White filed an answer in the Coffee County civil action generally denying she owed anything, but did not present her bankruptcy discharge as an affirmative defense. (Plaintiff's Exhibit B-4).

White then reopened her bankruptcy and sued First Financial, Grantham, and Morgan for violations of the discharge injunction. (Doc. 1). The parties conducted extensive discovery and the Court conducted a trial on May 1, 2015.

## II. LAW

The question presented here is whether there is a violation of the discharge injunction when a creditor induces a borrower to execute a promissory note that includes a discharged

indebtedness as a portion of its consideration. White argues that because the underlying consideration for the note was an indebtedness which was discharged, actions taken to collect the new note violated the discharge injunction. The Defendants argue that the new note post-dates White's discharge and for that reason they were free to collect the note without violating the discharge in bankruptcy. In the alternative, they argue that White's payments were voluntary and therefore there was no violation.

### A. Jurisdiction

This Court has jurisdiction to hear this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. § 1409(a). This is a final order.

### B. The Discharge Injunction

With exceptions not relevant here, after completion of the payments under a Chapter 13 Plan, "the court shall grant the debtor a discharge of all debts provided for by the plan." 11 U.S.C. § 1328(a). To be "provided for" within the meaning of § 1328(a), a creditor must be given notice of or have actual knowledge of a debtor's bankruptcy filing. In re Lohr, 377 B.R. 364, 368 (Bankr. M.D. Fla. 2006); Barnes v. Sawyer (In re Barnes), 326 B.R. 832, 837-38 (Bankr. M.D. Ala. 2005).

"A discharge in a case under this title– . . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect,

recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). A creditor can be held liable for willfully violating the discharge injunction, and a creditor's violation is willful if the creditor (1) knew that the discharge injunction was invoked and (2) intended the actions which violated the discharge injunction. Hardy v. IRS (In re Hardy), 97 F.3d 1384, 1390 (11th Cir. 1996).

Despite the restrictions of the discharge injunction, however, a debtor can reaffirm a debt pursuant to the requirements of 11 U.S.C. § 524(c). Poindexter v. S.W. Mo. Bank (In re Poindexter), 376 B.R. 732, 736 (Bankr. W.D. Mo. 2007). Also, a debtor may voluntarily choose to repay a discharged debt under 11 U.S.C. § 524(f). Id. n.1.

### C. Reaffirmation Agreements and Novations

Section 524(c) of the Bankruptcy Code provides an elaborate mechanism where debtors may reaffirm their obligation on a debt that would, but for the reaffirmation, discharge in bankruptcy. The process of reaffirming a debt is layered with protections to ensure that a debtor is properly informed of potential risks. It is carefully designed to prevent creditor overreach. The agreement must be in writing and either (1) signed by the debtor and her lawyer or (2) approved by the Court. The debtor has a minimum 60-day recision period. Moreover, an exacting and detailed disclosure must be made pursuant to § 524(k). All of this is to say that the Code places considerable emphasis on protecting debtors from improvident agreements.

Creditors are not permitted to circumvent the reaffirmation protections of § 524(c) by re-obligating the debtor post-discharge or by disguising a reaffirmation as a novation. That a promissory note is dated after a discharge in bankruptcy is not determinative of whether its

-6-

Case 13-01119    Doc 44    Filed 06/26/15    Entered 06/26/15 14:48:38    Desc Main
Document      Page 6 of 13

collection violates the discharge injunction. Rather, courts look at the consideration for the note. If any part of the consideration for a promissory note is a debt which was previously discharged in bankruptcy, collection of the note violates the discharge injunction. Even if a portion of the consideration for a new note is fresh consideration, collection of the note nevertheless violates the discharge injunction. The fresh consideration may have an impact on the remedy to be provided, but it does not excuse the violation of the discharge injunction.

Bankruptcy courts have strictly enforced the requirements of § 524(c). E.g., Ammons v. Eddy Fed. Credit Union (In re Ammons), Adv. Pro. 11-1082, 2012 WL 1252621, *8-9 (Bankr. D.N.M. Apr. 13, 2012) (holding that collection of a promissory note consisting in part of a discharged debt and in part of a debt arising after the discharge violates the discharge injunction); In re Zarro, 268 B.R. 715, 720-21 (Bankr. S.D.N.Y. 2001) (holding that collection of a promissory note executed after a discharge violates the discharge injunction where consideration for the note consists of a debt that was discharged in bankruptcy); In re Cruz, 254 B.R. 801, 815 (Bankr. S.D.N.Y. 2000) (to same effect); Smith v. First Suburban Nat'l Bank (In re Smith), 224 B.R. 388, 395-96 (Bankr. N.D. Ill. 1998) (same); In re Arnold, 206 B.R. 560, 564-66 (Bankr. N.D. Ala. 1997) (same); In re Lowry, 187 B.R. 761, 763 (Bankr. M.D. Fla. 1995).

In Smith, a debtor discharged an indebtedness to a bank in the amount of $19,000. He later purchased a house, financing the purchase with a mortgage to the same bank in exchange for $94,000. The bank added the $19,000 discharged debt and made the note for $113,000. The bank in Smith argued, as do the Defendants here, that because a new note had been executed,

there was a new debt that was unaffected by the discharge in bankruptcy. The court in Smith held that the bank violated the discharge injunction. Id. at 396.

Likewise, in Lowry, the court invalidated a purported novation where the debtor received no consideration and obligated herself to repay the exact amount discharged, plus $2,000 in attorney's fees. 187 B.R. at 763; see also Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1067-68 (9th Cir. 2002) (holding that agreement entered into by lawyers after they had received a discharge to remain liable for discharged debts was unenforceable as reaffirmation process had not been observed); In re Odling, No. 01-C-50007, 2001 WL 1155154, *2-4 (N.D. Ill. Sept. 26, 2001) (holding that execution of second guaranty agreement after discharge which did not comply with § 524(c) violated the discharge injunction); In re Lee, 356 B.R. 177, 181-83 (Bankr. N.D. W. Va. 2006) (requirements of § 524(c) are strictly construed and not subject to waiver).

### D. Voluntary Payments

Section 524(f) provides that "[n]othing contained in subsection (c) or (d) of this section prevents a debtor from voluntarily repaying any debt." The language here is succinct. A debtor is allowed to voluntarily repay a debt, even if it is discharged. It does not follow from this that a debtor may obligate herself, by way of a new contract, or a new promissory note, to repay a discharged debt. The term "voluntary payment" means just that. Payments made on a new note, the consideration for which was a previous debt that had been discharged in bankruptcy, have been held to be involuntary. Arnold, 206 B.R. at 566; Cherry v. Arendall (In re Cherry), 247 B.R. 176, 183 (Bankr. E.D. Va. 2000). "Voluntary payments made under § 524(f) . . . do not

-8-

empower the creditor to enforce the claim against the debtor." In re Martin, 474 B.R. 789, *7 (6th Cir. BAP 2012) (unpublished).

### III. ANALYSIS

**A. Factual Findings and Legal Conclusions**

It is not disputed here that First Financial was given notice of White's bankruptcy filing; it filed a claim and received some payment on its claim. Under these facts, it is clear that the indebtedness owed to First Financial was "provided for" by White's Chapter 13 plan and that its indebtedness was discharged.

The new note was not executed prior to entry of discharge, was not filed with the Court, and lacked the disclosures required by § 524(k). Had the Court been called upon to approve this agreement, it almost certainly would have refused. To promise to repay $9,000 at almost 30% interest, all for just $300 of new consideration, is an unimaginably bad bargain. Since First Financial did not obtain a reaffirmation agreement, the Court will not allow it to circumvent the elaborate protections built into this process.

Based on Grantham's testimony, the Court finds that Grantham knew that White's indebtedness had been discharged in bankruptcy. Moreover, Grantham violated the discharge injunction by obligating White on the new note. Contrary to the Defendants' assertion, the new note is not a new contract with wholly new and different consideration; rather, it is an improper reaffirmation disguised as a novation. The Court finds that Grantham attempted to circumvent the reaffirmation requirements of § 524(c) by characterizing the $7,805.90 portion of the new

-9-

note as having been paid to White.  In essence, Grantham falsified the Itemization of Amount Financed, so that the new note would not reflect on its face that it was in large part a renewal of the old note that had been discharged in bankruptcy.  Grantham knew that he was violating the discharge injunction and intentionally falsified the new note to conceal his unlawful activity.

The payment to Acceptance Loan as part of the new note is also puzzling.  The Chapter 13 trustee in White's bankruptcy reported that the secured claim of Acceptance Loan was paid in full with interest, meaning that the lien on the title to White's Mazda van should have been released.  (05-12545, Doc. 49).  Why Grantham would have taken it upon himself to pay Acceptance Loan an additional $469 was not explained at trial.  Grantham violated the discharge injunction when he obtained a lien on the title to White's Mazda van by paying $469 to Acceptance Loan from proceeds of the new note.

Furthermore, White's payments on the new note were not voluntary.  As discussed above, payments are not voluntary under § 524(f) when they are made pursuant to an obligatory contract.  This is especially true when the creditor sues to enforce the new contract, as Grantham and First Financial have done here.

When Grantham, acting on First Financial's behalf, obligated White to repay a discharged debt in a manner that was not in compliance with § 524(c), and when he obtained a lien on the title to her vehicle to secure the debt, he and First Financial violated the discharge injunction. Grantham and First Financial clearly knew the old note had been discharged, and clearly intended to violate the discharge injunction by rolling the old note into the new note and characterizing it as having been paid to White.  Therefore, their violations were willful.

-10-

Morgan's conduct is a much closer call. He certainly violated the discharge injunction by mailing demand letters to White and by filing suit in state court to collect the new note. However, it does not appear that he did so willfully. Morgan credibly testified that he had not been told that White did not actually receive $7,805.90 for the new note. Because the new note had been drafted in a manner that suggested White had received that money, there was no reason for a third party who lacked knowledge of the true nature of the loan – like Morgan – to suspect that there was anything amiss with the new note. Morgan also credibly testified that he had not been told that the debt had previously been discharged until after he filed the collection suit in state court. He knew of White's bankruptcy, but saw that it pre-dated the new note. Morgan could have determined that the "Amount Given to [White] Directly" was the amount she discharged by looking at the trustee's final report in White's bankruptcy and subtracting the amount disbursed to First Financial from the amount First Financial claimed. However, that is a very demanding burden to put on Morgan when he was not put on notice by either Grantham or White that she had not received that money in the new note and that it was merely a rollover of the old note.

In other words, Morgan did not know, nor reasonably could have known, that the discharge injunction was invoked as to the $7,805.90 portion of the new note itemized as "Amount Given to Me Directly." Grantham drafted the new note in a manner intended to deceive third parties, and that is precisely what he did to Morgan. Thus, while Morgan could perhaps have more thoroughly investigated the circumstances and consideration of the new note, he did not willfully violate the discharge injunction.

**B. Remedy**

-11-

Case 13-01119   Doc 44   Filed 06/26/15   Entered 06/26/15 14:48:38   Desc Main
Document     Page 11 of 13

Having determined that Grantham and First Financial wilfully violated the discharge injunction, the Court must next determine the remedy. To begin, the Court will enter an injunction to require the Defendants to cause the dismissal of the civil action is Coffee County. Moreover, the Court will enjoin the Defendants to release the security interest of First Financial on the certificate of title to the Mazda and deliver clear title to White. In addition, Defendants First Financial and Grantham shall pay White the sum of $1,613.80. White paid First Financial amounts totaling $1,913.80. The Court will subtract from that the $300 in fresh consideration which was given to White. Also, First Financial and Grantham shall pay White's attorney's fees and court costs in an amount to be determined.

White has asked the Court to award punitive damages. Punitive damages are available for violations of the discharge injunction. McLean v. Greenpoint Credit, LLC, 515 B.R. 841, 849-51 (M.D. Ala. 2014). While Grantham's conduct here was dishonest and reprehensible, White largely brought this on herself. She approached Grantham about a new loan, not the other way around. She testified that she had to have the $300 loan, but did not explain why it was so imperative. The Court is dismayed that White would enter into such a bad bargain so soon after emerging from bankruptcy.

Case 13-01119    Doc 44    Filed 06/26/15    Entered 06/26/15 14:48:38    Desc Main
Document      Page 12 of 13

For this reason, the Court elects not to award punitive damages. White will be made whole by the remedy outlined above, and the Court believes that obligating Grantham and First Financial to pay White's attorney's fees will sufficiently deter them from engaging in this sort of conduct in the future. The Court will enter a separate order in accordance with this opinion.

June 26, 2015.

                                        William R. Sawyer
                                        Chief United States Bankruptcy Judge